E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DAMARIS DIAZ (Cal. Bar No. 277524)
ANGELA C. MAKABALI (Cal. Bar No. 296824)
Assistant United States Attorneys
Violent & Organized Crime and
    Cyber & Intellectual Property Crimes Sections
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0302/2331
    Facsimile: (213) 894-3713
    E-mail:   damaris.diaz@usdoj.gov
              angela.makabali@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-188-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RON GAD |
| v. | |
| RON GAD, aka "D.D.," | |
| Defendant. | |

1.   This constitutes the plea agreement between RON GAD ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to the single-count Indictment, which charges defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Not argue for a sentence less than 84 months of imprisonment.

e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.   Make restitution pursuant to a stipulated restitution order to be entered by the Court at the time of sentencing.

j.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

1    l. Complete the Financial Disclosure Statement on a form

2 provided by the USAO and, within 30 days of defendant's entry of a

3 guilty plea, deliver the signed and dated statement, along with all

4 of the documents requested therein, to the USAO by either email at

5 usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation

6 Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

7    m. Agree to and not oppose the imposition of a period of

8 supervise release of no less than 10 years under the following

9 conditions of supervised release:

10    i. Defendant shall register as a sex offender, and

11 keep the registration current, in each jurisdiction where he resides,

12 where he is an employee, and where he is a student, to the extent the

13 registration procedures have been established in each jurisdiction.

14 When registering for the first time, defendant shall also register in

15 the jurisdiction in which the conviction occurred if different from

16 his jurisdiction of residence.  Defendant shall provide proof of

17 registration to the Probation Officer within three days of placement

18 on probation/release from imprisonment.

19    ii. Defendant shall participate in a psychological

20 counseling and/or psychiatric treatment and/or a sex offender

21 treatment program, which may include inpatient treatment, upon order

22 of the Court, as approved and directed by the Probation Officer.

23 Defendant shall abide by all rules, requirements, and conditions of

24 such program, including submission to risk assessment evaluations and

25 physiological testing, such as polygraph and Abel testing.  The

26 Probation Officer shall disclose the presentence report and/or any

27 previous mental health evaluations or reports to the treatment

28 provider.

1     iii. As directed by the Probation Officer, defendant

2 shall pay all or part of the costs of treating defendant's

3 psychological/psychiatric disorder(s) to the aftercare contractor

4 during the period of community supervision, pursuant to 18 U.S.C. §

5 3672. Defendant shall provide payment and proof of payment as

6 directed by the Probation Officer.

7     iv. Defendant shall not view or possess any

8 materials, including pictures, photographs, books, writings,

9 drawings, videos, or video games depicting and/or describing child

10 pornography, as defined at 18 U.S.C. § 2256(8), or sexually explicit

11 conduct, as defined at 18 U.S.C. § 2256(2). This condition does not

12 prohibit defendant from possessing materials solely because they are

13 necessary to, and used for, a collateral attack, nor does it prohibit

14 him/her from possessing materials prepared and used for the purposes

15 of his/her Court-mandated sex offender treatment, when defendant's

16 treatment provider or the probation officer has approved of his/her

17 possession of the materials in advance.

18     v. Defendant shall not associate or have verbal,

19 written, telephonic, or electronic communication with any person

20 under the age of 18, except: (a) in the presence of the parent or

21 legal guardian of said minor; and (b) on the condition that defendant

22 notify said parent or legal guardian of his/her conviction in the

23 instant offense/prior offense. This provision does not encompass

24 persons under the age of 18, such as waiters, cashiers, ticket

25 vendors, etc., whom defendant must interact with in order to obtain

26 ordinary and usual commercial services.

27     vi. Defendant shall not frequent, or loiter, within

28 100 feet of school yards, parks, public swimming pools, playgrounds,

youth centers, video arcade facilities, or other places primarily used by persons under the age of 18.

vii. Defendant shall not affiliate with, own, control, volunteer or be employed in any capacity by a business or organization that causes him/her to regularly contact persons under the age of 18.

viii.    Defendant shall not affiliate with, own, control, or be employed in any capacity by a business whose principal product is the production or selling of materials depicting or describing "sexually explicit conduct," as defined at 18 U.S.C. § 2256(2).

ix. Defendant shall not own, use or have access to the services of any commercial mail-receiving agency, nor shall he open or maintain a post office box, without the prior written approval of the Probation Officer.

x.    Defendant's employment shall be approved by the Probation Officer, and any change in employment must be pre-approved by the Probation Officer. Defendant shall submit the name and address of the proposed employer to the Probation Officer at least ten days prior to any scheduled change.

xi. Defendant shall not reside within direct view of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18. Defendant's residence shall be approved by the Probation Officer, and any change in residence must be pre-approved by the Probation Officer. Defendant shall submit the address of the proposed residence to the Probation Officer at least ten days prior to any scheduled move.

xii. Defendant shall possess and use only those computers and computer-related devices, screen user names, passwords, email accounts, and internet service providers (ISPs) that have been disclosed to the Probation Officer upon commencement of supervision. Any changes or additions are to be disclosed to the Probation Officer prior to the first use. Computers and computer-related devices include personal computers, personal data assistants (PDAs), internet appliances, electronic games, cellular telephones, and digital storage media, as well as their peripheral equipment, that can access, or can be modified to access, the internet, electronic bulletin boards, and other computers (collectively, "Digital Devices").

xiii.    All Digital Devices used by defendant shall be subject to search and seizure. This shall not apply to items used at the employment's site, which are maintained and monitored by the employer.

xiv. Defendant shall possess and use only those Internet Accounts that have been disclosed to, and approved by, the United States Probation and Pretrial Services Office upon commencement of supervision. Any changes or additions to Internet Accounts are to be disclosed to, and approved by, the Probation Officer prior to the first use of same. Disclosure shall include both user names and passwords for all Digital Devices and Internet Accounts. Internet Accounts include, but are not limited to, email accounts, social media accounts, electronic bulletin boards, or other account on the Internet.

xv. After the Probation Officer has given defendant approval to use a particular Digital Device or Internet Account,

6

1  defendant need not notify the Probation Officer about subsequent use

2  of that particular Digital Device or Internet Account.  Defendant

3  shall, however, notify his Probation Officer of any additions to,

4  removals from, or other modifications of the hardware or software on

5  any Digital Device or Internet Account that defendant causes to

6  occur, within one week of that addition, removal or modification.

7  The defendant shall not hide or encrypt files or data without

8  specific prior approval from the Probation Officer.

9      xvi. Defendant shall provide the Probation Officer

10  with all billing records for any service or good relating to any

11  Digital Device or Internet Account, including those for cellular

12  telephone, cable, Internet and satellite services, as requested by

13  the Probation Officer, so that the Probation Officer can verify

14  compliance with these requirements.

15      xvii.    Defendant shall comply with the rules and

16  regulations of the Computer Monitoring Program.  Defendant shall pay

17  the cost of the Computer Monitoring Program, in an amount not exceed

18  $32 per month per device connected to the internet.

19      xviii.    Defendant shall not possess, or attempt to

20  possess, any materials, whether in hard copy, digital, electronic, or

21  any other form, that depict sexually explicit and/or nude images of

22  children, including any victims of defendant's conduct (the

23  "Victims") and/or that contain personal identifying information,

24  including any access devices and bank/credit card account numbers, of

25  the Victims.

26      xix. Defendant shall not knowingly contact, or attempt

27  to contact, the Victims, or their families, including but not limited

28  to their parents, siblings, other relatives, any spouse or

7

significant other with whom victims may share an intimate
relationship, and any children of the Victims (all whether existing
now or during the pendency of any term of supervised release, and
collectively "the Victims' Families"), directly or indirectly by any
means, including but not limited to in person, by mail, telephone,
email, text message, or other electronic means, or through a third
party;

xx.  Defendant shall not attempt to locate the Victims
or the Victims' Families, or attempt to obtain information concerning
the whereabouts, phone numbers, email addresses, or other personal
identifiers of the Victims or the Victims' Families;

xxi. Defendant shall submit his person, and any
property, house, residence, vehicle, papers, Digital Devices,
Internet Accounts, and effects to search at any time, with or without
warrant, by any law enforcement or Probation Officer with reasonable
suspicion concerning a violation of a condition of
probation/supervised release or unlawful conduct by defendant, and by
any Probation Officer in the lawful discharge of the officer's
supervision function.

n.  Defendant further agrees:

i.  To forfeit all right, title, and interest in and
to any and all monies, properties, and/or assets of any kind, derived
from or acquired as a result of, or used to facilitate the commission
of, or involved in the illegal activity to which defendant is
pleading guilty, including but not limited to the following items
seized by law enforcement on October 24, 2022:

(I)  Black Samsung Cellphone, Serial
#R3CT30H293E;

8

1              (II) Black and Grey Samsung Tablet, Serial

2 #R52N900JZGD (the "Tablet");

3              (III)    Blue Colored Hewett Packard Spectre

4 X360 Laptop, Serial #5CD9288MRO; and

5              (IV) Black Samsung Smart Watch, unknown serial

6 number (together, the "Forfeitable Assets").

7              ii.  To the Court's entry of an order of forfeiture at

8 or before sentencing with respect to the Forfeitable Assets and to

9 the forfeiture of the assets.

10             iii. To take whatever steps are necessary to pass to

11 the United States clear title to the Forfeitable Assets, including,

12 without limitation, the execution of a consent decree of forfeiture

13 and the completing of any other legal documents required for the

14 transfer of title to the United States.

15             iv.  Not to contest any administrative forfeiture

16 proceedings or civil judicial proceedings commenced against the

17 Forfeitable Assets.  If defendant submitted a claim and/or petition

18 for remission for all or part of the Forfeitable Assets on behalf of

19 himself or any other individual or entity, defendant shall and hereby

20 does withdraw any such claims or petitions, and further agrees to

21 waive any right he may have to seek remission or mitigation of the

22 forfeiture of the Forfeitable Assets. Defendant further waives any

23 and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

24             v.   Not to assist any other individual in any effort

25 falsely to contest the forfeiture of the Forfeitable Assets.

26             vi.  Not to claim that reasonable cause to seize the

27 Forfeitable Assets was lacking.

28

vii. To prevent the transfer, sale, destruction, or loss of the Forfeitable Assets to the extent defendant has the ability to do so.

viii.     To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

ix.  That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

x.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

3.  The USAO agrees to:

a.  Not contest facts agreed to in this agreement.

      b.   Abide by all agreements regarding sentencing contained in this agreement.

      c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

      d.   Recommend that defendant be sentenced to a term of imprisonment no higher than 144 months of imprisonment, provided that the total offense level used by the Court to determine that range is 34 or higher and provided that the Court does not depart downward in offense level or criminal history category.

NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in the Indictment, that is, Distribution of Child Pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A), (b)(1), the following must be true: (1) defendant knowingly distributed matters which defendant knew contained visual depictions of minors engaged in sexually explicit conduct; (2) defendant knew each visual depiction contained in the matters showed minors engaged in sexually explicit conduct; (3) defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and, (4) the visual depiction had been mailed, shipped, transported, or using any means or facility of interstate commerce or in or affecting interstate commerce.

1

<u>PENALTIES AND RESTITUTION</u>

2      5.    Defendant understands that the statutory maximum sentence
3  that the Court can impose for a violation of Title 18, United States
4  Code, Section 2252A(a)(2)(A), (b)(1), Distribution of Child
5  Pornography, is: 20 years' imprisonment; a lifetime period of
6  supervised release; a fine of $250,000 or twice the gross gain or
7  gross loss resulting from the offense, whichever is greatest; and a
8  mandatory special assessment of $100.

9      6.    Defendant understands that the statutory mandatory minimum
10  sentence that the Court must impose for a violation of Title 18,
11  United States Code, sections 2252A(a)(2)(A), (b)(1), Distribution of
12  Child Pornography, is: 5 years' imprisonment, a five-year period of
13  supervised release, and a special assessment of $100.

14      7.    Defendant understands that, pursuant to the Justice for
15  Victims of Trafficking Act of 2015, the Court shall impose an
16  additional $5,000 special assessment if the Court concludes that
17  defendant is a non-indigent person, to be paid after defendant's
18  other financial obligations have been satisfied.

19      8.    Defendant understands that, pursuant to 18 U.S.C. § 2259A,
20  the Court may impose an additional special assessment of up to
21  $17,000.

22      9.    Defendant understands that defendant will be required to
23  pay full restitution to the victims of the offenses to which
24  defendant is pleading guilty.  Defendant agrees that, in return for
25  the USAO's compliance with its obligations under this agreement, the
26  Court may order restitution to persons other than the victim(s) of
27  the offenses to which defendant is pleading guilty and in amounts
28  greater than those alleged in the counts to which defendant is

pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $10,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that as a condition of supervised release, under Title 18, United States Code, Section 3583(d),

1  defendant will be required to register as a sex offender. Defendant

2  understands that independent of supervised release, he will be

3  subject to federal and state registration requirements, for a

4  possible maximum term of registration up to and including life.

5  Defendant further understands that, under Title 18, United States

6  Code, Section 4042(c), notice will be provided to certain law

7  enforcement agencies upon his release from confinement following

8  conviction.

9      13.   Defendant understands that, by pleading guilty, defendant

10  may be giving up valuable government benefits and valuable civic

11  rights, such as the right to vote, the right to possess a firearm,

12  the right to hold office, and the right to serve on a jury. Defendant

13  understands that he is pleading guilty to a felony and that it is a

14  federal crime for a convicted felon to possess a firearm or

15  ammunition.  Defendant understands that the convictions in this case

16  may also subject defendant to various other collateral consequences,

17  including but not limited to revocation of probation, parole, or

18  supervised release in another case and suspension or revocation of a

19  professional license.  Defendant understands that unanticipated

20  collateral consequences will not serve as grounds to withdraw

21  defendant's guilty plea.

22      14.   Defendant understands that, if defendant is not a United

23  States citizen, the felony convictions in this case may subject

24  defendant to: removal, also known as deportation, which may, under

25  some circumstances, be mandatory; denial of citizenship; and denial

26  of admission to the United States in the future.  The Court cannot,

27  and defendant's attorney also may not be able to, advise defendant

28  fully regarding the immigration consequences of the felony

convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support plea of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

**Defendant Distributes Child Pornography in December 2021**

On or about December 2, 2021, in Los Angeles County, within the Central District of California, defendant knowingly distributed materials that the defendant knew constituted child pornography through use of the Snapchat application on an IP address belonging to defendant.  Specifically, defendant, employing the username "holdenon4lyfe," posted a video titled "Holdenon4lyfe-None-faf52a45-a0b0-5239-a89d-2435b143d3f6~2-8ab814c20b.mp4."

The file is a video approximately 27 seconds in length and depicts a real minor female approximately eight-to-twelve years old wearing a dark pink t-shirt and no clothing from her waist down.  The female child is seated on the floor, facing the camera with her legs splayed open and the top portion of her vagina is visible.  The video begins with the child taking two fingers and inserting the fingers into her vagina.  Halfway through the video, the child lifts her

buttocks off the floor to show her entire vagina and buttocks as she continues to digitally penetrate herself with her fingers.  The video is part of a series called "Tara" identified by the National Center for Missing & Exploited Children as a series containing child pornography.

### Defendant Attempts to Entice an Undercover Officer Posing as a 13-Year-Old Girl

On September 20, 2022, an undercover detective ("UCO 1") with the San Luis Obispo County Sheriff's Department ("SLOCSD") posing as a 13-year-old girl on Chat Avenue, an online communications platform entered a Teen Chat Room using the username "Emma14" and received a private message from defendant, using the screen name "D.D."  Among other things, defendant asked UCO 1 if she was interested in older men, and said he was 30 years old.  After exchanging a few messages on Chat Avenue, defendant asked UCO 1 to continue communicating via text message.  UCO 1 agreed and sent defendant a text message on a number he provided.

On September 20, 2022, via text message, DEFENDANT asked UCO to send photos of herself.  UCO 1 sent DEFENDANT a photo of herself that was processed through a face altering application that made her appear to be a young teenage girl.  In return, DEFENDANT sent a photograph of himself sitting on a couch inside his therapy and counseling office.

Over the course of the next several weeks, defendant and UCO 1 exchanged explicit communications via text messages.  UCO 1 told defendant she lived in San Luis Obispo ("SLO").  For example, on September 20, 2022, by text message, defendant told UCO 1 that he was only able to talk to her while he was at work.  Defendant also told

1  UCO 1 that she had to be his "little secret," that he was "craving"
2  her, that he wanted to "lick [her] all over," asked "would you let me
3  eat your pussy?  I want to taste you," and told UCO 1 to call him
4  "daddy."  UCO 1 said her name was "Emma."  Defendant also asked UCO 1
5  what she had done sexually with other men in the past, and UCO 1 said
6  she had previously met an older man.  UCO 1 asked Defendant if he was
7  ok with her being so young.  Defendant replied "Yup."  UCO 1 asked
8  defendant if he would visit her.  Defendant replied "Yes, I
9  definitely would."  Defendant asked UCO 1 to send him more pictures
10 and videos.

11     On September 21, 2022, by text message, defendant continued
12 asking UCO 1 what she had done with the older man she had previously
13 met in person.  UCO 1 said she and the man had gone to a hotel room
14 to "kiss and cuddle and stuff."  UCO 1 asked what Defendant would do
15 with her if they met.  Defendant said he would only tell her over the
16 phone.  Defendant continued to ask UCO 1 for pictures and expressed
17 confusion over why she would not send more.

18     On September 22, 2022, by text message, defendant told UCO 1 he
19 was at work and horny because he was thinking about UCO 1: "I was
20 gonna jerk off lol," "I'm horny.  Should I watch porn?"  Defendant
21 asked UCO 1 to "help."  UCO 1 asked how she could help.  After trying
22 to get UCO 1 to send pictures of her face, defendant asked UCO 1 to
23 go to the bathroom and send a picture of her belly.  "Then lift your
24 shirt a bit. Show me your belly" "Plz.  I'll do anything 4u."
25 Defendant then sent a picture of himself holding his penis through
26 his pants and said "Make me harder."  Defendant continued to ask for
27 pictures and said he was nervous about whether UCO 1 was real and
28 said he had been scammed before.  Defendant said "I really want you

Emma" and sent pictures of his naked penis.  Defendant asked to speak on the phone, and UCO 1 said she would be able to speak the next day.

On September 29, 2022, another law enforcement officer ("UCO 2") posed as "Emma" and spoke to defendant on the phone.  The call was recorded.  Defendant said his name was "Holden."  The two discussed defendant traveling to San Luis Obispo to meet "Emma," and asked if she would ditch school to meet with him.  Defendant asked if he could take "Emma" to a hotel, and said he was dying to kiss her.  Once again, defendant asked for more pictures.

Approximately one minute after the call ended, defendant sent UCO 1 a picture of his erect naked penis with the text message "Just from hearing your voice.  I am dying to come get you."  Later, via text message, defendant told UCO 1, "Please snap a pic for Daddy." "I'm looking up SLO hotels rn [right now]."  Defendant asked UCO whether they could meet at a park in San Luis Obispo.  Defendant asked UCO "how old ru again? I honestly don't mind.  Just say." "BTW, I'm so into you" "I'd love to spoil you when I come. Anything you want."  UCO 1 said "I am 13.  My birthday is next month."  Defendant responded "Fuck. You're hot."  Defendant asked UCO 1 for her bra size and discussed what he and UCO should wear when they meet.  Defendant later said "I've cleared the date in October.  But let's talk about it.  Plan it."  UCO 1 said "Yehhh.  When."  Defendant replied, "Monday the 24th."  Defendant reminded UCO 1 to delete their messages from her phone.

On September 30, 2022, by text message, defendant told UCO 1 he had cleared his calendar to meet her in San Luis Obispo on October 24.  Defendant said he was nervous because of the consequences if

they got caught, and said he was paranoid because he had heard of fake texts, calls, and police traps.

On October 6, 2022, by text message, defendant discussed coming to see UCO 1 at the park. Defendant said, "Monday the 24th. I'm planning on it." Defendant discussed with UCO 1 what he would do to her at a hotel where no one could see them. Defendant discussed holding hands, kissing her neck, face, and lips, touching her breasts, kissing his way up her legs to her panties and under, and said "I want to taste you." Defendant asked UCO 1, "Do you have hair on your pussy?" UCO said "No." Defendant replied, "I wish I could see" and said "God. It makes me really hard to think about," "You show, and I'll show anything you want to see," "I'm going to cum when I think about you tonight." Defendant asked UCO 1 when she last masturbated.

On October 17, 2022, by text message, defendant asked UCO 1 for pictures, and UCO 1 sent a photo of herself altered to look like a 13-year-old girl. Defendant sent a clothed photo of himself. Defendant asked UCO 1 what she was doing. UCO 1 said she was doing homework and sent a picture of a child's math homework on a sheet of paper. Defendant asked UCO 1 "What grade ru in?" UCO replied "7th." Defendant said, "You're my little lover," "You make me hard," and "Love you baby." Later, defendant sent a picture of his erect penis and said, "Make me harder. Send. Please. I'm so hot 4u. I want to cum 4u."

On October 19, 2022, by text message, Defendant continued to ask UCO 1 for pictures and expressed that he needed to see more pictures in order to be comfortable with meeting UCO 1 in person. Defendant asked if UCO 1 would video chat with him. UCO 1 said she was not

1  comfortable to do that.  Defendant said UCO 1 did not really love him

2  if she did not want to do things that made him happy or more

3  comfortable.

4      On October 20, 2022, by text message, defendant said he did not

5  like it when he and UCO 1 fought.  UCO 1 sent defendant altered

6  pictures of herself.  Later, defendant questioned UCO 1 about her

7  past sexual history, and discussed the sexual acts he wanted to

8  perform on UCO 1.  Defendant also mentioned being concerned about

9  anyone seeing UCO 1 get inside his vehicle.  Defendant said he was

10  nervous about meeting at the park, which was in a residential

11  neighborhood, and preferred to meet at the golf course parking lot,

12  which was across from the middle school he believed UCO 1 attended.

13  UCO 1 said the park was near her friend's house, and defendant agreed

14  to meet her there.

15      Later that day, UCO 2 posed as "Emma" and spoke to defendant on

16  the phone.  The call was recorded.  The two discussed sexual

17  activities and defendant's upcoming visit to meet UCO 1.  UCO 2, as

18  "Emma," asked defendant if he would bring condoms, and defendant said

19  he would.  Defendant confirmed he would be at Laguna Hills Park when

20  UCO 1 got out of school and that he has a big car, a sports utility

21  vehicle with tinted windows.  Defendant asked "Emma" if she was

22  deleting their messages every night.  UCO 2, as "Emma," said she was.

23  UCO 2 ended the call by saying her mother was home and she had to get

24  off the phone.  Defendant said he couldn't wait until Monday, and he

25  loved her.

26      On the morning of October 24, 2022, defendant and UCO 1

27  continued communicating via text message, expressing their mutual

28  excitement for their meeting.  At around 11:08 am, defendant sent UCO

1 false exculpatory messages asking UCO 1 to confirm that she was actually a 19-year-old university student.  UCO 1 denied being 19. At around 12:46 p.m., once defendant was already on his way to San Luis Obispo, defendant again demanded that UCO 1 state that she was 19 years old.  UCO 1 said "yes I am 18 daddy," and provided a birth date that made her 18 years old.  In response, defendant said "Ok good.  Because I wouldn't come if you were underage."  Defendant admits that these were false exculpatory messages designed to attempt to escape prosecution in the event he was caught meeting UCO 1, who defendant believed to be a 14-year-old girl.

On October 24, 2022, at approximately 3:00 pm, SLOCSO saw defendant driving a 2019 dark colored Audi SUV bearing California license plate 06TEN11 in San Luis Obispo.  Defendant's vehicle spent 15 minutes driving in the vicinity of Laguna Hills Park, the designated meeting point with UCO 1.  He drove past the park once. At various times, defendant's vehicle pulled over to the curb, pausing for a few moments, and then would resume driving around the park, attempting counter-surveillance measures to detect law enforcement presence.  SLOCSO deputies in a marked car conducted a traffic stop of defendant's vehicle and arrested defendant, the driver and sole occupant of the vehicle.  Investigators conducted a search of the vehicle and seized, among other things, digital devices belonging to defendant, i.e., the Forfeitable Assets, including the Tablet.

### Forensic Review of the Tablet's Contents

On the Tablet, defendant received and possessed numerous files of child pornography.  More specifically, in one folder of a cloud-based file-sharing and storage application called Mega, called "Mega

Download," defendant received and possessed eight CSM video files, with the earliest dating back to January 2016.  One of these videos, entitled CLL4_Video-_(71).avi was edited with titles, credits, and music.  The titles in the video include the terms "8 years old ass fuck and ass vibrator" and "starring 8-year-old [Name redacted] filmed February 7, 2007."  After the opening titles, a female minor appearing to be approximately eight years old is seen straddling an adult male with her back to the camera, while the adult penis is penetrating her anus.  At 1 minute 37 seconds, a male adult is seen holding a white vibrator while the minor is on her hands and knees facing away from the camera, and the male adult is seen penetrating the minor female with the vibrator until the end of the video.  In addition, on the tablet's "cached" hard drive, defendant had approximately 1,162 child sexual abuse material ("CSAM") files that included images of bestiality, bondage, and abuse of infants and toddlers.

Using the that same Tablet, defendant also conducted or engaged in the following in October 2022:

        a.    Internet searches, including the terms:

            i.   "Underage sex in slo";

            ii.  "Catchung underage predatorsin san luis obispo";

            iii. "Underage sex opporation in san luis obispo";

            iv.  "Underage sex sting in san luis obispo";

            v.   "Child sex sting in san luis obispo";

            vi.  "Catch predator in san luis obispo";

        b.    Visits to the following websites, among others:

            i.   Teen-chat.org

            ii.  Kidschat.net

        c.   Bookmarks for the following websites, among others:

            i.   Teenfuckrx.com;

            ii.  Teenmoviesarchive.com;

            iii. Omegleteenporn.com; and

            iv.  Teeniestube.net/teenporn.

Additionally, using the Snapchat application, throughout 2022, defendant messaged with at least seven female victims, some who appeared to be minors, under the user name and/or vanity name "hold3non" and/or "Holden" in an attempt to obtain or have the victims produce photos or videos of themselves engaged in sexually explicit conduct.  Among these messages, defendant said the following to various individuals:

        a.   "I'm craving you . . . Show Daddy that sexy body";

        b.   "Come let Daddy fuck you" after receiving a short video depicting a closeup of a female fingering her vagina;

        c.   "Come play with Daddy";

        d.   "Let me see what you're wearing r[ight] n[ow]"; and

        e.   "I can be your secret Sugar Daddy . . . I'd buy you things or give you a gift card, but you have to earn it."

Defendant admits that many of the images and videos described above is child pornography as defined by Title 18, United States Code, Section 2256(8)(A).

With respect to each of the images and videos described above, defendant admits that he received them via and/or stored them on digital devices that had been mailed, shipped, or transported across state lines or in foreign commerce.

Defendant admits that all of the communications and distribution of child pornography described above took place over an electronic

communication system or other facility of interstate or foreign commerce.

SENTENCING FACTORS

16.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

17.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 22 | U.S.S.G. § 2G2.2(a)(1) |
| Prepubescent Minor | +2 | U.S.S.G § 2G2.2(b)(2) |
| Knowing Distribution | +2 | U.S.S.G. § 2G2.2(b)(3)(F) |
| Sadistic/Masochistic Conduct | +4 | U.S.S.G. § 2G2.2(b)(4)(A) |
| Pattern of Activity | +5 | U.S.S.G. § 2G2.2(b)(5) |
| Use of Computer | +2 | U.S.S.G. § 2G2.2(b)(6) |
| Number of Images | +5 | U.S.S.G. § 2G2.2(b)(7)(D) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF RETURN OF DIGITAL DATA

21.  Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

### WAIVER OF APPEAL OF CONVICTION

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### WAIVER OF APPEAL AND COLLATERAL ATTACK

23.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 44 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the

Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $10,000; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

25.  This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

26.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2    27.  Defendant agrees that if, after entering a guilty plea

3   pursuant to this agreement, defendant seeks to withdraw and succeeds

4   in withdrawing defendant's guilty plea on any basis other than a

5   claim and finding that entry into this plea agreement was

6   involuntary, then (a) the USAO will be relieved of all of its

7   obligations under this agreement; and (b) should the USAO choose to

8   pursue any charge that was either dismissed or not filed as a result

9   of this agreement, then (i) any applicable statute of limitations

10   will be tolled between the date of defendant's signing of this

11   agreement and the filing commencing any such action; and

12   (ii) defendant waives and gives up all defenses based on the statute

13   of limitations, any claim of pre-indictment delay, or any speedy

14   trial claim with respect to any such action, except to the extent

15   that such defenses existed as of the date of defendant's signing this

16   agreement.

17

## EFFECTIVE DATE OF AGREEMENT

18    28.  This agreement is effective upon signature and execution of

19   all required certifications by defendant, defendant's counsel, and an

20   Assistant United States Attorney.

21

## BREACH OF AGREEMENT

22    29.  Defendant agrees that if defendant, at any time after the

23   signature of this agreement and execution of all required

24   certifications by defendant, defendant's counsel, and an Assistant

25   United States Attorney, knowingly violates or fails to perform any of

26   defendant's obligations under this agreement ("a breach"), the USAO

27   may declare this agreement breached.  All of defendant's obligations

28   are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

30.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

1  evidence derived from the statements should be suppressed or are

2  inadmissible.

3           COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                         OFFICE NOT PARTIES

5       31.  Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the USAO's sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10      32.  Defendant understands that both defendant and the USAO are

11  free to: (a) supplement the facts by supplying relevant information

12  to the United States Probation and Pretrial Services Office and the

13  Court, (b) correct any and all factual misstatements relating to the

14  Court's Sentencing Guidelines calculations and determination of

15  sentence, and (c) argue on appeal and collateral review that the

16  Court's Sentencing Guidelines calculations and the sentence it

17  chooses to impose are not error, although each party agrees to

18  maintain its view that the calculations in paragraph 17 are

19  consistent with the facts of this case.  While this paragraph permits

20  both the USAO and defendant to submit full and complete factual

21  information to the United States Probation and Pretrial Services

22  Office and the Court, even if that factual information may be viewed

23  as inconsistent with the facts agreed to in this agreement, this

24  paragraph does not affect defendant's and the USAO's obligations not

25  to contest the facts agreed to in this agreement.

26      33.  Defendant understands that even if the Court ignores any

27  sentencing recommendation, finds facts or reaches conclusions

28  different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Damaris Diaz*                                          9/12/24
_____                    _____
DAMARIS DIAZ                                            Date
ANGELA C. MAKABALI
Assistant United States Attorneys

_____                    09/12/24
RON GAD                                                 _____
Defendant                                              Date

_____                    9/12/24
MARK WERKSMAN                                          _____
Attorney for Defendant                                 Date
RON GAD

32

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          09/12/24
RON GAD                                    Date
Defendant

33

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2     I am RON GAD's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further, I

4 have fully advised my client of his rights, of possible pretrial

5 motions that might be filed, of possible defenses that might be

6 asserted either prior to or at trial, of the sentencing factors set

7 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 guilty plea pursuant to this agreement.

16

17 _____     Date 9/12/24

MARK WERKSMAN
Attorney for Defendant
18 RON GAD

19

20

21

22

23

24

25

26

27

28